### HOLMES v. BLOOMINGDALE et al.

(Supreme Court, Appellate Division, Third Department.   May 7, 1902.)

**1.** SALE OF PATENT—FALSE REPRESENTATIONS.

Representation by a patentee, in negotiating the sale of the patent, that nothing like it has ever been patented, is sufficient to avoid the contract, at the election of the purchaser, if there are similar patents in direct competition with the patent in question, even though the latter is not an infringement thereof.

**2.** SAME—EVIDENCE—ADMISSIBILITY—COPIES OF OTHER PATENTS.

Where the validity of a sale of a patent is attacked as induced by false representation that the patent differed from other patents, copies of other patents claimed to be similar to the patent in question are admissible.

3. EVIDENCE—PRIVILEGED COMMUNICATION—ATTORNEY AND CLIENT.

Evidence of conversations and communications between an attorney and his client is not incompetent as against the client, when the attorney at the time of the conversation and communications represented both plaintiff and defendant.

4. SAME—APPEAL—HARMLESS ERROR.

The admission against a client of incompetent evidence of conversations between the client and his attorney is harmless error, when the facts so shown are also shown by written statements of the client which are in evidence.

Appeal from trial term, Washington county.

Suit for specific performance by John M. Holmes against Cornelius Bloomingdale and another. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

T. D. Trumbull, Jr., for appellant.

H. Albertus West, for respondents.

CHASE, J. On the 16th day of September, 1898, plaintiff entered into a written agreement with the defendants by which he agreed to apply to the United States patent office for a patent on his improved barrel cover, and that, when said patent should be obtained, he would assign and transfer it to the defendants. The defendants agreed to pay the costs and expenses of procuring the patent, and also to transfer to the plaintiff, when said patent should be obtained and duly assigned to them, certain real estate in the county of Warren. It was further agreed that, in case the patent office should fail to grant to the plaintiff letters patent upon his invention, then the agreement to convey should be of no force or effect. Defendants employed patent attorneys in New York City, and requested plaintiff to have said attorneys procure the patent for him, and they agreed to pay all expenses. Plaintiff, through such attorneys, made application for letters patent for his claimed invention, stating, in five separately numbered paragraphs, what he claimed as new, and for which he desired to secure letters patent. Thereafter the claim was rejected, with a statement that claims 1 to 3, inclusive, were rejected as defining nothing patentable over patent No. 548,199, dated October 22, 1895, granted to one Hubbard, and patent No. 600,574, dated March 15, 1898, granted to one Coy, and that claims 4 and 5 were rejected for reasons stated, which include the prior issue of the Hubbard and Coy patents, and two other patents mentioned. The attorneys in New York were then discharged by the plaintiff, and he employed a patent attorney in Washington, through whom he canceled the five claims for which he had stated that he desired to secure letters patent, and inserted three other claims, separately numbered. The claim so filed was rejected on the ground that the applicant had done nothing more than to aggregate the features shown in other patents specifically mentioned by the department. Subsequently the claim so last filed was reconsidered and allowed, and a patent issued to the plaintiff, numbered 634,729, dated the 10th day of October, 1899. On the 25th day of October, 1899, plaintiff tendered to the defendants an assignment of said patent of

October 10, 1899, and demanded a deed of the property described
in the contract. The defendants refused to give a deed of the prop-
erty, and this action was brought to compel specific performance of the
contract by the defendants.

Plaintiff, on the trial in this action, in describing his invention, says:

"My invention is in the manner in which it is fastened to the barrel, by
swinging that lever around. It is locked and held in position so that they
can roll the barrel around in any shape they have a mind to. Another feature
is the removing of this cover,—this show case. It can be taken off, and the
cover still remain a cover for any barrel, or whatever they want to use it for."

The defendants claim that the representations made to them by the
plaintiff prior to the execution of the contract were untrue, and
amounted to a fraud upon them, and that the contract is, in conse-
quence thereof, void, and that it will be inequitable to require them to
perform the conditions of the contract. One of the defendants testi-
fied:

"I went up there with my brother. Both of us looked at the cover. We
thought well of it, and asked Mr. Holmes if he had ever looked up the rec-
ords on barrel covers. He said, 'Yes,' he had, and there was nothing like it;
it was entirely new."

The defendants then asked the plaintiff to go to their attorneys and
procure a patent, and that they would pay the expense thereof. The
cover for the barrel, and all the apparatus connected therewith, were
sent by the plaintiff to such attorneys; and subsequently the defend-
ants met the plaintiff at their office, and one of the defendants testi-
fied:

"They [the attorneys] had looked it over while they had it there, and they
were ready to make the application. They asked if they should make a
search for it, and Mr. Holmes said, 'No,' it wasn't necessary; that he had
looked the patents over in the patent office, pertaining to barrel covers, and
that nothing had ever been patented like it. * * * Prior to entering into
this contract, Mr. Holmes called my attention to the show-case portion of
this invention, with the other part. He told the advantages of it,—that it
would protect the articles displayed from the dust and dirt, and exposure
from the weather. * * * Prior to entering into this contract, I did not
have any knowledge of the Hubbard or Coy patent."

The other defendant testified:

"Mr. Holmes explained the merits. I thought it was a good thing. I asked
him if he had ever seen anything like it, or if there was anything like it on
the market. He said, 'No,' there wasn't. * * * I only had one interview
with Mr. Holmes, and I asked him if he had ever seen anything like that,
and he said he never had. Mr. Holmes said he had searched the records.
He said that when I asked him. He said: 'No; I have searched the record,
and there is nothing like it. It is entirely new. * * *' It was entirely
his own invention."

The court has found that these statements were made by the plaintiff
to the defendants, and that they amounted to a fraud upon them. It
is unnecessary to decide whether the plaintiff's patent is an infringe-
ment upon the Hubbard, Coy, and other patents. It is very clear that
the barrel cover and apparatus, as exhibited to the defendants prior
to the execution of the contract, were not entirely new, as represented
by the plaintiff. The barrel cover and attachments as shown in the
Hubbard and Coy patents, although differing somewhat in detail from
the barrel cover and attachments as shown in the plaintiff's patent,

nevertheless make an article which necessarily comes into immediate competition with it, and seriously affects its value. The plaintiff's statement of his invention, as hereinbefore quoted, comes far short of his statements to the defendants at and prior to the time of the execution of the contract. We approve the conclusion of the trial court.

The plaintiff claims that the court erred in receiving in evidence copies of the Hubbard and Coy patents, respectively. The record shows that no objection was made to the receipt of the specifications and drawings on the ground that they were incomplete or insufficiently certified. The objections relate wholly to their materiality, and to their competency so far as they call for a transaction between the plaintiff and his attorneys. There is no merit in the objections as made. The plaintiff, in his testimony, and in the conduct of the case, repeatedly recognized the Hubbard and Coy patents, and only objected to their materiality as a defense in this action. The plaintiff also had in court a model of the Hubbard patent, which he used, when on the witness stand, in pointing out the details of the same, and the difference between such patent and the one issued to him.

The objections to testimony of conversations and communications between the plaintiff and the patent attorneys in New York City were not well taken, for the reason that the attorneys represented the defendants as well as the plaintiff, and also for the reason that all such testimony appears in the case, not alone from the statements called out from the plaintiff, but from written statements and specifications signed by the plaintiff, which are also in evidence; and the rulings were, in any event, harmless.

Judgment affirmed, with costs. All concur.