## ROTH et al. v. JACKSON.

No. 19560. Opinion Filed May 19, 1931.

Rehearing Denied June 30, 1931.

Mason & Williams and Stewart Lynch, for plaintiffs in error.

P. D. Busby, for defendant in error.

RILEY, J. Plaintiffs in error, who were plaintiffs below, appeal from a judgment in favor of defendant in error, defendant below, in an action to recover an alleged balance due upon an unexpired lease of real property for a term of years.

The lease was in writing, for a term of five years from the 15th day of December, 1920, for a total consideration of $10,500, payable $175 per month, "until the said total sum of ten thousand five hundred dollars ($10,500.00) shall have been fully paid."

The amount sued for was $1,662.50, being the rental for the period from March 1, to December 16, 1925.

Defendant admitted liability for the month of March, 1925, in the sum of $175.00 which he offered to pay and tendered in court. He defended as to the balance, and in his answer alleged, in substance: That sometime in the spring of 1924, he entered into an oral agreement with plaintiffs, whereby, in consideration of defendant vacating the premises and surrendering possession thereof to plaintiffs, upon the completion of a building which defendant was then building, plaintiffs agreed to release, cancel, and hold for naught, the lease sued upon; that thereafter about March 15, 1925, defendant vacated the leased premises and plaintiffs took possession thereof, put another tenant in possession, changed the doors

and locks to the building and delivered the keys to their tenant then in possession.

Plaintiffs replied by general denial.

The cause was tried to a jury, resulting in a verdict in accord with defendant's contention. From the judgment entered thereon, plaintiffs appeal.

Some 35 assignments of error are presented under six propositions, but we deem it unnecessary under the record to consider more than the first, third and fourth propositions.

The first proposition goes to the order overruling the demurrer of plaintiffs to defendant's answer. We think the answer was sufficient to charge a release of the lease contract by operation of law as defined by this court in McFarland v. Lanier & Bros., 50 Okla. 336, 150 Pac. 1097, wherein it was held:

"The surrender of a lease contract by operation of law is created when the parties to the lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they have both agreed to consider the surrender as made. * * *"

See, also, Flannagan et al. v Dickerson, 103 Okla. 206, 229 Pac. 552.

The third contention is that the court erred in overruling plaintiffs' demurrer to defendant's evidence. This requires an examination of the evidence of defendant to ascertain whether or not there is any evidence reasonably tending to establish his claim of surrender of the lease.

Defendant testified, in substance, that sometime in the spring of 1924, his wife, through the settlement of her father's estate, became the owner of a lot near the premises in controversy; that he talked to two of the plaintiffs about that time (the leased premises were owned by the three plaintiffs, Roth, Stahl, and Mason) and informed them of his desire to build on his wife's lot and move his business in the building, but that he would be compelled to borrow money to erect the building and could not pay interest and the rent on the leased premises at the same time, and asked them if they would release him from the rental contract upon the completion of the building which he was contemplating building; that they or one of them told him then, "You go ahead and see what arrangements you can make," and on another occasion one of them told him: "If you will put up a building, go ahead and put it up. You are not paying enough rent." That on another occasion one of the plaintiffs told him: "Well, as I told you before, go ahead and we will not

have any trouble over the unexpired lease here." He testified to a number of such conversations with plaintiffs at different times between February and October, 1924; that about October, 1924, he completed his new building and moved his business office into it, but left some of his property in the leased premises until about the 15th of March, 1925; that about September, 1924, Mr. Stahl one of the plaintiffs, was at defendant's office in his new building to collect the rent, and the following conversation was held:

"Q. What was the subject of that conversation? A. Mr. Stahl was there to collect the rent and I gave him a check and I said, 'This should be about the last check I ought to give you and I will be about ready to move and what are you going to do with me on the balance of this lease here?' As I handed the check—I think I was talking to him as I wrote the check, and he said, 'Tom, you know what we told you in the past, go ahead and move,' and I said, 'All right, Bill; that is mighty fine,' and I said, 'If that is the way you feel about it, write me up $35,000 tornado insurance on the stock here.'"

This was in substance the whole of his evidence, which was wholly insufficient to establish an express surrender, since the alleged agreements were not in writing. The general rule with reference to express surrender is stated in 35 C. J. 1084, as follows:

"An express surrender, sometimes called a 'surrender in fact,' as distinguished from a 'surrender by operation of law,' is usually required to be in writing. No particular form of words is necessary, nor is it required that there should be a formal delivery or cancellation of the deed or instrument which created the estate to be surrendered. All that is necessary is the agreement of the proper parties manifesting such an intent followed by a yielding up of possession to the lessor. There must, however, be a consideration for the surrender."

However, defendant also testified that although he moved the principal part of his property from the leased premises in September or October, 1924, and that in September, 1924, he told one of the plaintiffs, "This ought to be about the last check I should give you," he continued to pay up to and including the month of February, 1925, and at the trial, as heretofore stated, admitted liability for rent for the month of March, 1925. He further testified that about the 10th of March, 1925, there was a fire in one of the rooms of the building owned by plaintiffs, which room was adjoining the room which he had occupied. That the room in which the fire occurred had been

occupied by a firm known as the Jansen-Upp-Myer Manufacturing Company. That Mr. Upp, a member of the said firm, was a brother-in-law of defendant. That the fire rendered that room unfit for use and Jansen-Upp-Myer Manufacturing Company moved their office into the same place where defendant had had his office in the leased premises. That the doors to the leased room had been damaged by the fire or firemen, and new locks were placed on the door by plaintiffs, and that defendant thereafter never had the keys; that up to the date of the fire defendant kept the keys to the leased room in his office in his new building after about September, or October, 1924. That defendant never gave the Jansen-Upp-Myer Company permission to move into the room, never turned the keys over to them, and they never paid him any rent; that they were not his tenants, and he did not know under what arrangements they moved into the room.

The general rule as to what constitutes acceptance so as to constitute surrender and acceptance by operation of law is stated in 35 C. J. 1091, as follows:

"An express agreement to accept the premises need not be shown, but the landlord's consent may be implied from circumstances and from acts of the parties, inconsistent with the continuance of the lease. There must, however, be some unequivocal act on the part of the landlord which unmistakably evinces an intention on his part to terminate the lease and the relationship of landlord and tenant. The advertising of the premises for sale with an offer of immediate possession to the purchaser, does not show an acceptance of the surrender, nor does the allowing of third persons to occupy the premises temporarily without rent after the abandonment."

This rule, or rather the same in substance, quoted from 24 Cyc. 1373, has been approved by this court in Rucker v. Mason, 61 Okla. 270, 161 Pac. 195.

The evidence of defendant, we think, is hardly sufficient to show any unequivocal act on the part of plaintiffs which unmistakably evidenced an intention to terminate the lease and the relation of landlord and tenant. But for what was further quoted from Underhill on Landlord and Tenant, in Rucker v. Mason, supra, and the rule in this state in favor of the party against whom a demurrer to the evidence is directed, we would not hesitate to hold that the order overruling plaintiffs' demurrer to defendant's evidence was reversible error. That part of the quotation from Underhill referred to is:

"Of course, if a landlord, within a short time after the tenant has gone out, shall take possession of them without anything being brought home to the tenant to show that the intent of the landlord is to hold him for the rent, a slight presumption of an intention on the part of the landlord to accept the surrender may arise which is for the landlord to rebut by proof of facts and circumstances which will show a contrary intention."

From the evidence of defendant, as a whole, we are not prepared to say that it was not sufficient to raise a slight presumption of intention on the part of the plaintiffs to accept the surrender of the premises. This being true, however slight the presumption may be, it is sufficient to present a question of fact for a jury until met and rebutted by plaintiffs. We, therefore, hold that there was no error in overruling the demurrer to defendant's evidence.

The fourth proposition is that the court erred in denying a requested instruction for a verdict for plaintiffs.

This requires an examination of the evidence as a whole. The slight presumption that by inference might have arisen from the mere fact that another party was found to occupy the premises without any authority from defendant was, we think, completely and absolutely overcome by the uncontradicted evidence offered by plaintiffs in rebuttal. Without reviewing same at length, we deem it sufficient to say that the uncontradicted evidence of plaintiffs showed facts and circumstances which completely destroyed the slight presumption that might have been indulged from defendants unexplained evidence. But when plaintiffs testified and produced the witness Jansen, who explained just how and under what circumstances his company got and held possession of the leased premises, there was nothing in our judgment, left for a jury to pass upon. There was but one conclusion that could be drawn from the evidence as a whole, and that, that there was no intention whatever upon the part of plaintiffs to terminate the lease and the relationship of landlord and tenant. In effect the evidence of the witness Jansen was such as to show conclusively that plaintiffs in fact never did take possession of the leased premises after defendant vacated same. When this was made to appear by the uncontradicted evidence so positive as to admit of no question of the facts, it was the plain duty of the trial court to direct a verdict for plaintiffs.

The judgment is, therefore, reversed, and the cause remanded, with directions to render judgment for plaintiffs in the amount of the claim.

LESTER, C. J., and SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and HEFNER, CULLISON, and KORNEGAY, JJ., dissent.