(No. 6272.    September 5, 1936.)

WILLIAM EHLERT and LIZZIE JOHNSON, as Administrators of the Estate of WILLIAM EHLERT, Deceased, Substituted for WILLIAM EHLERT, Respondents, v. WILBUR E. WOODS and BEATRICE WOODS, His Wife; LEWISTON NATIONAL BANK, a Corporation, Appellants, and FARMERS NATIONAL WAREHOUSE CORPORATION, a Corporation, Originally Co-defendant, not Now Involved.

[63 Pac. (2d) 1000.]

Edward C. Butler, for Appellants Wilbur E. Woods et ux and Farmers National Warehouse Corporation.

Cox & Ware for Appellant Lewiston National Bank.

Tannahill, Durham & Hyatt for Respondents, William Ehlert et al., Administrators of the Estate of William Ehlert, Deceased, Substituted for William Ehlert.

AILSHIE, J.—September 15, 1929, William Ehlert leased to appellant Wilbur E. Woods certain farming lands for four years, rental to be paid by one-third of all the crops, 150 acres of the land to be left summer-fallowed at the expiration of the lease, and $500 cash per year, evidenced by four promissory notes, due September 1, 1930, September 1, 1931, September 1, 1932, and September 1, 1933, and certain additional acreage to be put into crops from year to year. The two notes due in 1930 and 1931 were later secured by a crop mortgage given by appellant Woods and his wife to William Ehlert; and the note due September 1, 1930, was extended to September 1, 1931.

In August or September, 1931, the lease was in some manner terminated, which will be more fully discussed hereinafter. April 24, 1934, suit was instituted for the collection of the amount represented by these two notes.

The Lewiston National Bank held a second chattel mortgage, securing two promissory notes, and appeared in the action not to foreclose its mortgage but to join with appellant Woods in his defense and attempt to defeat recovery on the two promissory notes and mortgage held by Ehlert, thereby enhancing its security. Since the bank does not seek to foreclose its chattel mortgage herein or recover on its notes, its attitude or position in the case need not be further discussed, since its position, so far as the determination of the controversy here is concerned, is identical with that of appellant Woods.

It was stated at the trial as follows:

"Mr. WARE: If the Court please, the Bank is not seeking to foreclose its mortgage at this time, but is merely showing its interest, to show that it has an interest in the crop, as a defendant.

Mr. DURHAM: Didn't we stipulate that fact this morning? Didn't we introduce the mortgage and the notes?

Mr. WARE: No, the notes were not introduced. Mr. Butler, may it be stipulated—

The COURT: Wait a minute now. Any stipulation—you are addressing this only to Mr. Butler?

Mr. WARE: Well, to Mr. Durham, too. May it be stipulated that there is due from the defendants Wilbur E. Woods and Beatrice Woods, to the defendant Lewiston National Bank, on this mortgage which has been introduced in evidence the sum of $5,619.72 with interest at 8 per cent per annum from July 8, 1933, and the sum of $40.00 with interest at 8 per cent. per annum from January 12, 1934, less $16.00 paid on October 24, 1934.

Mr. DURHAM: That is satisfactory to us.

The COURT: All right; it is so stipulated.''

After the entry of judgment the plaintiff William Ehlert died, and his son, William Ehlert, and Lizzie Johnson were appointed as administrators of his estate and appear as respondents herein.

The defense of Woods and wife, as set forth in their answer and responsive to which evidence was introduced, was that August 4, 1931, a settlement was made between appellant Woods and Ehlert, in effect settling their accounts in full, distributing the balance of the crops, and releasing appellant from any obligation on the two promissory notes, and terminating the lease as of that date. Appellant also contends that, if there was not such a mutual termination, on that day or at least prior to September 1st, the originally due date on one note and renewed due date of the other, the premises were surrendered up to Ehlert, and possession thereof taken by him, which, by operation of law, extinguished all rent not then due; and that since the notes were not due until September 1st, the indebtedness herein sued on never matured or accrued.

The rule of law contended for by appellants and supported by authorities (*Willis v. Kronendonk,* 58 Utah, 592, 200 Pac. 1025, 18 A. L. R. 947; *Roth v. Jackson,* 150 Okl. 145, 299 Pac. 204; *Boswell v. Merrill,* 121 Cal. App. 476, 9 Pac. (2d) 341; *Monger v. Lutterloh,* 195 N. C. 274, 142 S. E. 12; *Garcia v. Olivares,* (1934) (Tex. Civ. App.) 74 S. W. (2d) 1064; *American Jewelry Co. v. Barrs Self-Driver Co.,* 48 Ohio App. 239, 192 N. E. 865; *Alvord v. Banfield,* 85 Or. 49, 166 Pac. 549; *Boyd v. George,* 2 Neb. (Unof.) 420, 89 N. W. 271; note to 18 A. L. R. 960), is not seriously controverted by respondents. It is to the effect that:

"When a leasehold is surrendered before the expiration of a period for which rent accrues, the rent for the whole of such period, *not then due,* is extinguished and can neither be distrained for nor collected by action."

It is contended by appellants that on August 4, 1931, they surrendered the possession of the premises to Ehlert who entered into possession and completed the harvesting of the crops, and that the responsibility of appellants for subsequently accruing rentals was then terminated.

The first question arises on the finding of the trial court "that no agreement was entered into between the plaintiff and the said Wilbur E. Woods, or anyone for or on his behalf, whereby the said indebtedness as represented by said notes was cancelled or agreed to be cancelled." The finding at length on that issue is as follows:

"That on August 4th, 1931, the plaintiff William Ehlert, and the defendant, Wilbur E. Woods, adjusted their rights with reference to approximately 100 acres of spring grain sown and growing on the said leased premises, but no agreement was entered into between the plaintiff and defendant, Wilbur E. Woods, with reference to the promissory notes referred to in plaintiff's complaint as Exhibits 'A' and 'B'; that no mention of said indebtedness as represented by said promissory notes was made as between the plaintiff and defendant, Wilbur E. Woods, or anybody for or on his behalf, and that no agreement was entered into between the plaintiff and the said Wilbur E. Woods, or anyone for or on his behalf, whereby the said indebtedness as represented by said notes was cancelled or agreed to be cancelled."

█ There is some conflict in the evidence on the issue as to whether the parties meant to refer to or include the notes in their conversation of August 4, 1931. The greater weight of the evidence is to the effect that they did so, but we would not be justified in disturbing the finding for that reason; so it may be conceded that no specific agreement was made at that time for cancelation of the indebtedness represented by the two notes in question, and that no reference was made to them.

The next, and most serious, question is as to whether the premises were surrendered up to and taken over by Ehlert on August 4, 1931, or at any time prior to September 1st of that year. On that issue the court found as follows:

"That the said premises leased from the plaintiff by the defendant, Wilbur E. Woods, by the lease under date of September 15th, 1929, were abandoned and surrendered to the plaintiff by the defendant, Wilbur E. Woods, subsequent to September 15th, 1931, and that the said plaintiff took possession of said premises subsequent to September 15th, 1931, and the said plaintiff reentered and took possession of said leased premises without any agreement with the defendant, Wilbur E. Woods, relative to the termination of said lease;

"That the two promissory notes referred to in plaintiff's complaint as Exhibits 'A' and 'B,' were by their terms due and payable prior to the abandonment of said leased premises by the defendant, Wilbur E. Woods, and that the rent for the year of 1931 had accrued and was due and owing at the time of the abandonment by the said Wilbur E. Woods and the reentry of said premises by the plaintiff, William Ehlert."

█ The evidence abundantly supports the finding to the effect that the premises "were abandoned and surrendered to the plaintiff by the defendant Wilbur E. Woods," but we have searched the record in vain to find any substantial evidence to support the following part of the finding, to the effect that the surrender was "subsequent to September 15, 1931, and that the said plaintiff took possession of said premises subsequent to September 15, 1931." The evidence, as disclosed by the record, is conclusive that Woods aban-

doned and surrendered up possession of the premises on August 4, 1931, and so informed Ehlert at the time; and that they at that time had an agreement with reference to the 100 acres of uncut grain, the hay that was stacked on the premises, the grain that had been threshed and was in the warehouse, and the grain and hay that was taken from the swath cut around the 300-acre grain field.

It also appears that Ehlert had already anticipated taking over the uncut grain and had talked with one Walmsley in reference to cutting the same. Ehlert testified in regard to these matters as follows:

"A. Well, Wilbur Woods, when we got down to business, Wilbur Woods asked me the first thing how would I trade my threshed grain, sacked, for the grain cut around the outside of the 300 acres—the number of sacks I forgot.

"Q. That is the combine swath you were talking about?

"A. Yes. And he says: 'We've got a small stack of hay over in the orchard,' and he says: 'We're done with this place and we've got no use for that hay'; and he says: 'You know somebody in here that wants that hay'; and he says: 'I'll take that grain for that hay there, and there's a few loads around the field yet that ain't been hauled in'; and— Well, you fellows mentioned so much hay in the barn, this morning, but I didn't—

"Q. Just tell me about the conversation you had.

"A. Well, he mentioned that to me, and I looked around and saw Walmsley, and Walmsley had been talking about cutting this crop on shares if I got it—half for me—and I looked around to see whether he was there yet, and I told Woods: 'Just a minute'; and I turned around and asked Walmsley, I said: 'Will you put that hay up yet if we make a trade, on shares,' and he says: 'Yes, I'll put that hay up for you, if you make the trade.'

"Q. Which hay was that?

"A. That was the 100 acres of standing grain or the 90 acres. We had this standing grain put up for hay. And I turned right square around and talked to Mr. Woods, I says: 'If you put in that standing grain there in the field, what you have already condemned or refused to cut, I will trade you; I will give you that threshed grain—and that

little stack of hay; if you put in that standing grain I will trade you.' And he just looked at me and says: 'All right.' He says: 'I would sooner have that threshed grain than I would hay, because we are going to leave the place.

. . . . . . . . . . . . . .

"Q. Now, was there any conversation at that time with reference to any indebtedness that he owed you?

"A. Well, I really don't think we mentioned the notes. He didn't mention them, I know, and I am sure I didn't.

. . . . . . . . . . . . . .

"A. Well, he told me right there in the grain office, he says, 'We are done with the place,' he says; 'we ain't going any further with it, and we have no use for that hay'; and consequently he wanted to trade it for something that was worth a little something.''

This conversation, testified to by the landlord himself, discloses a clear intention on the part of the tenant to abandon the lease; that he was not ''going any further with it''; and it likewise discloses the assent of the landlord and acceptance of the premises by him. The conduct of the landlord in relation to the premises subsequent to August 4th was inconsistent and incompatible with any belief or understanding on his part that the lease was still in force or that the lessee still had or claimed any further interest in the leasehold. (*Roth v. Jackson*, 150 Okl. 145, 299 Pac. 204; 35 C. J. 1091, sec. 277.)

Now in this state of the law and the facts of the case, the inquiry must be answered as to the liability of appellants on these two promissory notes.

The first note, which fell due September 1, 1930, was given for the pasturage rental for the year 1930 which had been earned and fell due long before the lease was surrendered. The extension of time of payment to September 1, 1931, did not change the consideration for which the note was given, viz., for rental that had already accrued.

A different question arises with reference to the note which fell due September 1, 1931. That note was given for the 1931 pasturage rental. All the admissions and substantial evidence in the case conclusively establish the fact, that the lease was surrendered and the surrender was accepted by

the landlord on August 4, 1931,—more than a month prior to the accrual of the 1931 rental. The landlord received his share of the crop that had already been harvested, and accepted and took possession of the unharvested crop and immediately employed a man to complete the harvesting.

The leasehold, having been surrendered and accepted prior to the date on which the 1931 pasturage rental would fall due, extinguished the 1931 rental not then due, so that Ehlert was not entitled to recover on that note.

It has been argued that the notes could not have been included in the settlement of August 4th for the reason that at that time they were the property of the Lewiston National Bank, having been assigned to the bank on July 14, 1931. We take it that this evidence was introduced, and the contention was made, for the purpose of proving that there could not have been a complete settlement which covered and included these promissory notes.

There is some conflict as to whether the tenant knew of the assignment of these notes. He testifies that he did not know it, while the landlord testifies, in a general way, that the tenant did know but gives no reason or fact upon which the assertion is made. This controversy, however, is of no consequence in the decision of the case, as we view it, for the reason that no issue is tendered by the pleadings as to the notes being, or having been, the property of the bank at any time.

The complaint alleges that Ehlert was the owner of the notes and makes no mention whatever of their having been assigned to the bank or of having been the property of the bank; and no issues thereon were tendered by the answer. Other assignments of error have been urged, but, in view of the conclusions we have reached, their consideration is immaterial to a decision of the case.

The judgment will be affirmed as to the note given for the 1930 rental, on which the maturity date was extended to September 1, 1931, and the judgment will be reversed as to the note given for the 1931 rental which fell due September 1, 1931. In view of the fact that the attorney fee was fixed on the basis of the judgment going in favor of the plaintiff for both notes, it will be necessary for the court to determine

the amount of attorney's fees to be allowed on the judgment for the one note. The cause is hereby remanded to the trial court for further proceedings in conformity with the views herein expressed. Costs awarded to appellants.

Budge and Holden, JJ., concur.

GIVENS, C. J., Concurring in Part and Dissenting in Part.—I concur with Justice Ailshie as to the first note. As to the second, I dissent, and the payment of the note should be required because it was admittedly not in the possession or ownership of W. Ehlert at the time of the claimed settlement in August or September, 1931; and the evidence is sufficient to show that it was not then considered, and that the repossession of the premises by Ehlert was after the second note had become due and the termination of the lease period of 1931.

MORGAN, J., Dissenting in Part.—It is shown by undisputed evidence that prior to August 4, 1931, the date on which Ehlert, now deceased, and appellant, Wilbur E. Woods, agreed to terminate the lease, the notes, which were negotiable, given by Woods and wife to evidence the indebtedness for pasture, had been sold to The Lewiston National Bank and that Ehlert was not, at the time of the agreement, the owner or holder of them but repurchased them from the bank thereafter and before the commencement of the action.

There was no agreement that the notes were to be canceled and, at the time of the termination of the lease, appellant, Wilbur E. Woods, owed the bank the indebtedness evidenced by them and he owed Ehlert nothing for pasture. There was no rent due to the landlord from the tenant to be extinguished by operation of law by the cancelation of the lease.

It was not necessary that plaintiff tender an issue as to the sale of the notes to the bank and repurchase of them by him. He could and did state a cause of action on them without doing so.

As an affirmative defense appellants alleged in their answer with respect to the agreement to terminate the lease:

"That the defendant W. E. Woods thereupon offered to surrender possession of said premises to William Ehlert together with the unmatured spring wheat and barley and summer fallowed land, in satisfaction of any and all indebtedness due from the defendant W. E. Woods to William Ehlert. That the said William Ehlert thereupon accepted said offer and entered into the possession of said premises."

Replication has been abolished in Idaho (I. C. A., sec. 5-603), and new matter pleaded in the answer in avoidance or as an affirmative defense or counterclaim is deemed denied. (Sec. 5-812.)

In view of the fact, conclusively established, that Woods did not owe Ehlert for pasture at the time of the agreement to terminate the lease, but owed the bank the indebtedness evidenced by the notes to recover which this action was brought, I dissent from that part of the opinion which reverses the portion of the judgment allowing recovery on the note given for the 1931 rental and am in favor of affirming the entire judgment appealed from.

ON REHEARING.

(January 15, 1937.)

AILSHIE, J.—In this case a rehearing was granted on petition of respondent and the case reargued at the November term at Lewiston.

In respondent's brief on rehearing it is said:

"This court construes 'going to leave the place' as having left the place, whereas the language imputes a future leaving, the time of which it was necessary for the defendant to establish."

It should be remembered, however, that Mr. Ehlert himself testified as follows:

"Well, he told me right there in the grain office, he says, *'We are done with the place,'* he says: *'we ain't going any further* with it, and we have no use for that hay'; and consequently he wanted to trade it for something that was worth a little something."

It will be seen that these statements are in the present tense and are the admissions of respondent himself as to what was said in the conversation had between himself and appellant in the grain office in Lewiston on August 4th. Appellant spoke both for the present and the future.

According to the testimony of Mr. Ehlert, Jim Woods, who had lived on the place as appellant's agent and tenant, moved

"Around, I have an idea, about the last of August or first of September. Yes, he was about, I think the last end of it—He started moving right after harvest—once in a while a load; and the last moving—I know *my son lived already in the house,* and it was pretty close to the middle of September when he moved the last load.

"Q. When did your son move into the house?

"A. Well, it was between the first and the 15th of September."

He also testified that some time between the first and 15th of September he had a talk with Woods and he testified:

"He told me a month before that, he says, 'Don't you stand back. If anybody wants this place we are gone.'

"Q. Who said that?

"A. Jim Woods."

Objection was made to this testimony and after some discussion the court said: "As far as the testimony on both sides shows, the thing was all over. Woods had no further interest at that time."

It is contended that, since this court sustains the finding of the trial court that there was no agreement between the parties for the surrender of the notes, it must follow that the subsequently accruing rentals should be paid. The conclusion is not justified, either under the facts or the law. While appellant was unable to furnish sufficient proof to satisfy the trial court that the parties actually agreed to the cancelation of the subsequently accruing rentals, it does not follow that they are collectible by respondent from appellant, if appellant has successfully shown that the leasehold was actually abandoned by the lessee and accepted by the lessor prior to the date on which the rent would fall due. While the trial court found that no agreement was entered into between plaintiff and defendant, Wilbur E. Woods, with

reference to the promissory notes referred to in plaintiff's complaint, he did find, on the other hand, that the premises "were abandoned and surrendered to the plaintiff by the defendant, Wilbur E. Woods, subsequent to September 15th, 1931, and that the said plaintiff took possession of said premises subsequent to September 15th, 1931."

Now, the only error we find in this connection is, that the abandonment took place *prior* to September 15th instead of subsequent thereto, and the finding should have been to that effect.

It has been suggested by respondent that appellant's answer did not tender the issue of abandonment and surrender of the premises and a consequent cancelation of the subsequently accruing rental by operation of law. It is apparent, however, from the findings, that the trial court and the parties considered that issue as raised, and accordingly findings were made thereon.

It is insisted by counsel for respondent that prior to the transaction of August 4th Ehlert had sold and assigned these notes to the bank and that he was not at that time the owner thereof; and that he again became the owner of the notes by reason of the failure of appellant to pay them and the bank charging them back to respondent's account. Of course he is not an innocent purchaser of the notes and does not so contend. When they were charged back to his account at the bank, he took them subject to the same defense, so far as appellant is concerned, that could have been made against them, had he at all times been the owner and holder of these notes.

We discover no valid reason for receding from the position announced in the original opinion herein. The judgment directed in the original opinion will stand as the decision of the court, and it is so ordered.

Holden and Budge, JJ., concur.

Morgan, C. J., and Givens, J., each adheres to the opinion expressed by him on the original hearing.