## WILLIS v. KRONENDONK.

No. 3626. Decided September 16, 1921. (200 Pac. 1025.)

1. LANDLORD AND TENANT—LANDLORD CANNOT RECOVER RENT NOT DUE AT TIME OF SURRENDER AND ACCEPTANCE. Where tenant surrenders and landlord accepts premises during the term of the lease, the landlord cannot recover rent not due and payable at the time of the surrender.

2. LANDLORD AND TENANT—LANDLORD NOT ENTITLED TO RENT FOR PORTION OF YEAR PRIOR TO SURRENDER, WHERE RENT FOR YEAR WAS NOT DUE ON SURRENDER. Where tenant surrendered and landlord accepted premises during the last year of the term, but before the rent for such year became due, the landlord could not recover rent for that portion of the year prior to the surrender of premises.

3. LANDLORD AND TENANT—LESSEE HELD NOT LIABLE ON RENT NOTE ON SURRENDER BEFORE MATURITY. Where premises were surrendered to and accepted by landlord during the last year of the term before the note given by lessee at time of execution of lease for the rent for such last year became due, the lessee was not liable on note, having been released therefrom by surrender and acceptance of premises before it became due.

4. LANDLORD AND TENANT—ANSWER HELD TO PLEAD TENANT'S RELEASE FROM LIABILITY FOR RENT, AND NOT FAILURE OF CONSIDERATION FOR NOTE. In action on note for rent for last year of term, answer alleging that the premises were surrendered to and accepted by the landlord before the end of the term, and before any rent for the last year of the term was due and payable, and that by reason thereof "the consideration for said note failed," held to plead lessee's release from liability for rent for such last year, and not to plead failure of consideration as a defense; the quoted words being merely a legal conclusion.

5. PLEADING—STATEMENT THAT CONSIDERATION FAILED A LEGAL CONCLUSION. In action on note, statement in answer that "the consideration for said note failed" held to state a mere legal conclusion.

6. LANDLORD AND TENANT—FACTS HELD TO ESTABLISH SURRENDER AND ACCEPTANCE. Where lessee during last year of term, told lessor that he was going to have trouble in making the farm pay, and lessor replied, "Well, if you can't make it, move off," and lessee on lessor's refusal to reduce the rent, remarked, "I will move off," and lessor replied, "Very well, it is up to you," followed by surrender and a reletting by lessor to third party, there was surrender and acceptance.

7. LANDLORD AND TENANT—LANDLORD, TAKING UNCONDITIONAL POSSESSION AFTER ABANDONMENT, CANNOT RECOVER RENT. Where a tenant abandons premises, and the landlord unconditionally goes into possession thereof and treats them as though the tenancy had expired, there is a surrender, precluding landlord from recovering rent or suing for damages, since, if he desires to reserve the right to recover rent, he must recognize the tenant's rights in the premises for the unexpired term, and sue him for damages on his breach of covenant to pay rent.

8. EVIDENCE—JUDICIAL NOTICE TAKEN OF DORMANT AND GROWING SEASONS WITH RESPECT TO USE OF LAND FOR AGRICULTURAL PURPOSES. The court will take judicial notice of the fact that, with respect to farm lands used for agricultural purposes, there is a dormant and growing season in each year, and that in Utah

the principal growing season is between April and October; in some years a little earlier, and in others a little later.

9.  APPEAL AND ERROR—ON 'REVERSING JUDGMENT FOR PLAINTIFF, ACTION ORDERED DISMISSED WHERE FACTS WERE UNDISPUTED. Where, on undisputed facts, plaintiff is not entitled to recover, and the result depends on a legal question, the Supreme Court, in reversing judgment for plaintiff, will order district court to dismiss the action.

GIDEON, J., dissenting.

Appeal from District Court, Second District, Weber County; *A. W. Agee*, Judge.

Action by J. G. Willis against Arie Kronendonk. Judgment for plaintiff, and defendant appeals.

JUDGMENT REVERSED, and case dismissed.

*George Halverson*, of Ogden, for appellant.

*John G. Willis*, of Ogden, for respondent.

FRICK, J.

The plaintiff, as assignee of one Rufus A. Garner, commenced this action in the district court of Weber county to recover upon a promissory note made and delivered by the defendant to said Garner. The complaint is in the usual form in such actions. The defendant filed an answer, in which, after making certain denials, he, as an affirmative defense, averred:

"That on the 14th day of November, 1912, the said Rufus A. Garner, payee in said promissory note, leased, demised, and let to defendant by a certain agreement in writing 92 acres of land in Uintah, Weber county, Utah, for a period of five years, for the sum of $200 down, and the balance of $150 October 31, 1913, to be covered by a note due October 31, 1913, and $350 on the 31st day of October, 1914, and $400 per year, October 31, 1915, October 31, 1916, and October 31, 1917, which said several payments were covered by promissory notes, and that the promissory note set forth

in the complaint here, was given to cover the payment due October 31, 1917; that on or about March 1, 1917, with the consent of the said Rufus A. Garner, payee in said promissory note, and the holder of said lease, this defendant surrendered the balance of the term thereof to the said lessor, who accepted a surrender thereof and entered into the possession of said property and every part thereof, and that the said Rufus A. Garner should have surrendered said note to this defendant at the time of accepting the surrender of said lease; that after such surrender of said leased premises the said Rufus A. Garner either continued in possession thereof himself, or leased the same for a long period of time to some other party; that the consideration for said note failed by the acceptance of the surrender of said lease."

The defendant further averred that the note was assigned by said Garner to plaintiff long after the same became due, and that the same was so assigned to plaintiff for collection, and that said Garner is the real party in interest.

There is no dispute respecting the facts, which, in substance, are that the note was assigned to plaintiff, after the same was due, for collection merely; that on the 14th day of November, 1912, the defendant leased from said Garner the land referred to in defendant's answer for a period of five years, commencing on the date aforesaid, for which the defendant agreed to pay as rent the several amounts stated in his answer, and to evidence which the notes set forth were given, of which the note in suit is the last one named in the answer. A copy of the lease was produced in evidence, in which it was provided that the rent should be evidenced by the notes aforesaid. It further appeared that the defendant did not occupy the leased premises for the full five-year period, but that in April, 1917, he left the same with the consent of Garner, and that the latter let the same to another for the remainder of the year 1917.

Upon that subject the defendant testified that, before he "moved off" the premises, he and Mr. Garner had a conversation in which in speaking about the rent, the defendant said to Garner, "It is hard for a man to make it this year," to which Mr. Garner replied, "Well, if you can't make it, move off," and the defenadnt answered, "Thank you." Upon the same subject Garner testified that the defendant had

asked him for a reduction of the rent, which he had declined
to make, and that the defendant then said, "I'll move off,"
to which Garner replied, "Very well, it is up to you." Gar-
ner added: "That is the sum and substance of the conversa-
tion." Garner, however, also testified that within a few days
after the defendant had moved off the premises "a Jap
moved on the place, whose name he said was Sakuma."
After Garner had testified that the defendant had left the
premises, and that Sakuma, the Jap, had taken possession
(the court found the date on which defendant left the prem-
ises to have been April 28, 1917), and that Sakuma had paid
rent to Garner for the premises for the remainder of the
year, defendant's counsel asked Garner: "How much rent
did he pay?" Plaintiff objected to the question, upon the
grounds that it was "incompetent and immaterial." The
court, in giving his reason for sustaining the objection, said:

"It is immaterial what arrangement he made. If the lease was
surrendered to him in May [April] and he got $1,000 for it, that is
wholly immaterial."

Defendant excepted to the ruling. In view that it is be-
yond controversy that the defendant left—surrendered—the
premises to Garner in the latter part of April, 1917, and that
Garner accepted the surrender and placed another tenant in
possession, and from whom he collected rent for the remain-
der of the year 1917, it is not necessary to quote further from
the evidence. Upon the foregoing facts, the district court
proceeded upon the theory that the premises had been sur-
rendered by the defendant to, and accepted by, Mr. Garner
for the unexpired term of 1917.

Notwithstanding the undisputed fact that the premises
were leased for a term of years, and that the rent was pay-
able in annual instalments as evidenced by the notes, the last
of which is the one in suit, and that the rent was not payable
until the end of each year, the district court, nevertheless,
proceeded to ascertain the amount of the rent due from de-
fendant by dividing the whole year into twelve monthly
parts. In doing that the court divided the amount of rent
payable for the last year, to wit, $400, by 12, and thus deter-

mined the amount for each month during the period defendant remained in possession to be $33.33. The court then found that the defendant occupied the premises from November 14, 1916, to some time in April, 1917, making a period of a little in excess of five months. The court then multiplied the time the defendant was in the occupation of the premises at the rate of $33.33 per month, which aggregated the sum of $183.33, for which judgment was entered against the defendant on the $400 note. From that judgment defendant prosecutes this appeal.

Defendant has assigned a number of errors, but in his brief he relies upon two legal propositions, which, stating them in his own words, are:

"(1) That the evidence shows a surrender by the defendant, and an acceptance by Garner, and a consequent release of any future rents not yet accrued; and

"(2) That if there was not a surrender the court erred in refusing to permit the defendant to show the amount of rent paid by the Japanese to Garner."

In view that there is no dispute in the evidence, the district court correctly held as a matter of law that there was a surrender of the leased premises by the defendant, the lessee, to Mr. Garner, the lessor, in April, 1917. It is also undisputed, and, in view of the record, it cannot be disputed, that no part of the rent was due or payable at the time the premises were surrendered by the tenant and accepted by the landlord in April, 1917. Nor, in view of the undisputed facts and the law applicable thereto, does it make any difference whether it is held that the defendant abandoned the premises rather than that he surrendered them. The undisputed fact is that Mr. Garner unconditionally accepted the premises in April, 1917, and that he leased them to another. In the light of the foregoing facts the question arises whether Garner, the landlord, did not release or discharge the defendant from the payment of any rent for the year 1917.

The legal effect of a surrender of leased premises by the tenant to the landlord during the term for which they were leased, and before the rent is due and payable, has frequently been declared by the courts, and, so far as the writer is ad-

vised, there is no conflict among the decisions, although they are very numerous and emanate from both English and American courts. It has so frequently been held by the courts aforesaid that in case a tenant surrenders the premises to his landlord before the end of the term, and before any of the rent is due and payable, the tenant is released or discharged from the payment of all rent, and that the landlord is without a remedy, that the rule has practically become elementary. The doctrine is likewise stated by all the text-writers on Landlord and Tenant. In 2 Underhill, Landlord and Tenant, § 730, the author states the rule in the following language:

"The effect of a surrender is to terminate the relation of landlord and tenant, and to put an end to the lease so far as the rights of the parties to it are concerned, and to their reciprocal duties and obligations. For a surrender at once terminates all covenants in the lease in favor of either party, where no cause of action has accrued or matured during the life of the lease. Neither has the landlord, after he has accepted a surrender of the premises, a cause of action for damages against his former tenant by reason of the diminished rent paid thereafter by a tenant whom he has accepted under a new lease in place of his former tenant. But a surrender, or the rescission of a lease after rent has accrued, does not prevent its subsequent recovery by the landlord. If, however, there is a surrender of the premises before rent is due the rule is otherwise. There is no apportionment of rent up to the date of surrender. The acceptance of a surrender by the landlord prevents him not only from recovering rent accruing in the future, but also where it takes place during a rental period, it prevents him from recovering for occupation for any period short of the whole period. The rent for the whole of the period, which is not then due, is extinguished, and the landlord can compel the tenant to pay no part thereof."

In 2 McAdam on Landlord and Tenant (4th Ed.) § 399, the author says:

"It is well settled that, when the term is surrendered before the expiration of a period for which rent accrues, the rent for the whole of such period, *not then due*, is extinguished and can neither be distrained for nor collected by action." (Italics ours.)

The author then gives an illustration of what amounts to a surrender, as follows:

"Therefore, where A, demised to B., * * * rent payable quar-

terly, and during a current quarter, some dispute arising between the parties, B. told A. that she would quit immediately; and A. answered, she might go when she pleased, and B. quitted, and A. accepted possession, * * * it was held that A. could neither recover the rent which, by virtue of the original contract, would have become due at the expiration of the current quarter, nor rent pro rata for the actual occupation of the premises for any period short of the quarter"—citing cases from the courts of both England and this country.

To the same effect is 2 Tiffany, Landlord and Tenant, § 191, and Taylor's Landlord and Tenant (8th Ed.) § 518. In 16 R. C. L. pp. 973, 974, §§ 484, 485, it is said:

"A surrender of the leasehold interest in the entire premises terminates the lease and all unmatured obligations between the parties dependent upon the continuance of the leasehold estate, and it is therefore well settled that a surrender releases the tenant from all liability for unaccrued rents. This principle as to the effect of surrender is the true foundation of the views taken in those cases which hold that the re-entry upon or reletting of the demised premises in case they are abandoned by the tenant releases the tenant from liability for future accruing rents. The liability of the tenant for unaccrued rents may, however, by the express terms of the surrender be continued, and the court will give effect to such provisions. It is well settled that a tenant's liability for rents accrued at the time of the surrender are unaffected thereby. A surrender between rent days discharges the tenant from all liability for the rent of the current period in case the rent is not payable until the end of such period, and the landlord in such case is not entitled to recover a proportionate part of the rent for such period as had expired at the time of the surrender. The theory of this rule is that the rent is not due, and that the contract does not contemplate the payment of rent until the completion of the period preceding the rent day. The continuation of the tenancy during this period is a condition precedent to the payment of the rent, and the landlord, by accepting a surrender before the rent day, waives this condition."

To the same effect is 23 Cyc. 1163.

*Ireland* v. *United States, etc., Co.,* 72 App. Div. 95, 76 N. Y. Supp. 177, is a well-considered case. The court, after discussing the evidence (72 App. Div. at page 102, 76 N. Y. Supp. 182), states the rule thus:

"Nor could the defendant [the tenant] be charged with the rent that became due on April 1, 1899. It is conceded that defendant surrendered possession of the premises to the plaintiff on the

31st of March, 1899, the day before this rent became due. When there is a surrender before rent due, *there is no apportionment of rent up to the day of surrender.* The rent for the whole of the period not then due is extinguished." (Italics ours.)

The foregoing decision was affirmed by the New York Court of Appeals in 175 N. Y. 491, 67 N. E. 1083.

In *Reed* v. *Snowhill,* 51 N. J. Law, at page 164, 16 Atl. at page 679, the court, after referring to the doctrine of surrender, says:

"With this ending of the estate or interest in the land goes also all covenants in the lease which had not matured and become actionable during the continuance of the estate."

In *Curtiss* v. *Miller,* 17 Barb. (N. Y.) at page 479, it is said:

"It is well settled by numerous adjudged cases that, when the term is surrendered before the expiration of a period for which rent accrues, the rent for the whole of such period, not then due, is extinguished, and can neither be distrained for nor collected by action."

In a recent case from California, *Baker* v. *Eilers Music Co.,* 26 Cal. App. 371, 146 Pac. 1056, it is said:

"A lessor, who takes possession of property delivered to him by his tenant and does so unqualifiedly, thereby releases his tenants. He may accept possession of the property for the benefit of the tenant and relet the same; in the latter case he has no action, except one for damages for the difference between what he was able in good faith to let the property for and the amount provided to be paid under the lease agreement"—citing cases.

To the same effect is *Rehkopf* v. *Wirz,* 31 Cal. App. 695, 161 Pac. 285.

The following cases are all in point upon the question of surrender and the discharge of the tenant as a consequence of such surrender: *Welcome* v. *Hess,* 90 Cal. 507, 27 Pac. 369, 25 Am. St. Rep. 145; *McKensie* v. *Farrell,* 17 N. Y. Super. Ct. 192; *Sperry* v. *Miller,* 16 N. Y. 407; *Hunter* v. *Reiley,* 43 N. J. Law, 480; *Giles* v. *Comstock,* 4 N. Y. 270, 53 Am. Dec. 374. It is not necessary to cite more of the numerous cases upon the subject. If the reader desires to pursue the question, he will find a large number of cases cited in support of the texts hereinbefore quoted.

The foregoing cases have been referred to and quoted from rather copiously, for the purpose of showing that the courts are all agreed that, where there is a surrender by a tenant and an acceptance by the landlord, as in the case at bar, no action can be maintained by the landlord after such surrender for any rent due and payable at or before the time the surrender went into effect, that in case of surrender the landlord can only maintain an action for the rent that was due and payable at or before the time of the surrender, and that in case of surrender before the rent is payable there can be no apportionment of the rent. So far as the writer is advised there are no decisions to the contrary. None have been cited, and the writer, after making diligent search, has not found any. In order, therefore, to uphold the judgment of the district court, we must not only depart from the uniform holdings of the courts, but we must also violate the contract entered into between the defendant as tenant and Mr. Garner as landlord. By the terms of the lease the rent was payable in a lump sum at the end of each year during the five-year period. The district court, however, disregarded the terms of the lease and treated them as though the rent were made payable monthly. If the rent had been payable 2 monthly, then, under all the decisions, the defendant would be required to pay rent for the months he was in possession during the last year and before the surrender was made. In view, however, that the rent was not payable until long after the premises were surrendered to and accepted by Garner, the defendant, as matter of law, was released from the payment of any rent for the last year of the term, and the district court was without legal authority to apportion the rent as it attempted to do.

Nor does the fact that the rent was evidenced by a note in any way affect defendant's rights in the premises. The doctrine or principle that, as between landlord and tenant, the latter is released or discharged from the payment of rent for the whole period of time for which the rent is payable, if the premises are surrendered to and accepted by the landlord before any part of the rent is due and payable, is always

available to the tenant as a defense if he insists upon it. The right to make the defense arises out of the relationship of the parties and the nature of the contract **3** or transaction, and not the form of the promise to pay rent. The contention, therefore, that in this case the doctrine does not apply because the rent was evidenced by a note is wholly without merit.

It is, however, also suggested, and the district court, it seems, seriously considered the fact, that the defendant had interposed a plea of failure of consideration, and that inasmuch as the defendant occupied the premises for a portion of the last year of his term for that reason, that plea was not established, except in part. In taking that view the district court erred in at least two particulars: (1) In holding that the defendant pleaded failure of consideration as a defense; and (2) in concluding that such a plea could be considered as between landlord and tenant in view of the undisputed facts in this case.

As to the first proposition it is very clear that the defendant did not plead failure of consideration as a defense. What he did plead in the answer was that the leased premises were surrendered to and accepted by the landlord before the end of the term, and before any rent for the last year of the term was due and payable. After stating the facts respecting the surrender, the pleader added that by reason of **4** the surrender of the premises to and the acceptance thereof by the landlord "the consideration for said note failed." That statement was a mere legal conclusion of the pleader and was of no effect as a pleading of facts. The statement amounted to no more than if the pleader had said:

"That by reason of the surrender of the premises to and the acceptance thereof by the landlord before the end of the term and before any rent was due and payable under the lease the defendant was released."

To have so pleaded would merely have been a statement of a legal conclusion and not a pleading of facts. In view of the undisputed facts in this case the conclusion would no doubt have been correct as a matter of law, but it would have

performed no function in the pleading. For the same reason the conclusion that the consideration of the note had failed performed no function whatever. That was a mere conclusion, deduced from the facts of surrender and acceptance of the premises. The facts respecting the surrender of the premises to and the acceptance thereof by the landlord, and the circumstances under which they occurred, were the only necessary facts to be pleaded in order to entitle the defendant to the defense that he was released or dischargd from the payment of rent. Those facts were pleaded, but no confusion whatever would have arisen, had the pleader stopped after stating the facts. The mere fact, however, that the pleading is not couched in the most approved terms makes no difference.

Moreover, the mere fact that the pleader added his conclusion in no way affects the defendant's right to insist upon the defense of release. In this connection it is also important to keep in mind that the real legal question involved here is one of release or discharge from an obligation by operation of law, and not one of failure of consideration. By reason of the surrender of the premises by the defendant as tenant and the acceptance thereof by Mr. Garner as landlord before the rent was due and payable the defendant was released or discharged from payment of rent by operation of law, and being so released or discharged no action for the rent becoming due and payable after such surrender and acceptance can be maintained against the defendant.

The legal proposition is one of having been released or discharged from an obligation by operation of law, and not whether the plaintiff may recover to the extent that the consideration passing between him and the defendant has failed, if it has only partially failed.

Nor is there any merit whatever to the contention made by plaintiff that the premises were abandoned by the defendant. Taking Mr. Garner's own version of the transaction, it is clear and explicit to the effect that, when the defendant told Garner, "I will move off," Mr. Garner said, "Very well, it is up to you." This being followed by defendant's leaving

the premises, and by Mr. Garner's accepting them and renting them to another, constituted an irrevocable surrender and acceptance. Assuming, however, that there had been merely an abandonment of the premises by the defendant, then the result, in view of the undisputed facts, would still have to be the same. As pointed out in the case cited from California, where a tenant abandons the premises, and the landlord unconditionally goes into posession thereof and treats them as though the tenancy had expired, it amounts to a surrender, and the landlord cannot thereafter recover any rent, nor sue for damages. If he desires to reserve that right, he must recognize the tenant's rights in the premises for the unexpired term, and sue him for damages upon his breach of covenant to pay rent. This, however, is elementary doctrine.

If it were further assumed, however, that the district court's judgment could be maintained upon the theory assumed by it, the judgment, nevertheless, could not be sustained as matter of law. As we have seen, the court apportioned the rent and entered judgment at the monthly rate of $33.33 for the time the defendant occupied the premises during the year 1917. If it were assumed that the court had the power under the law to make such an apportionment, yet the apportionment was merely arbitrary and without any evidence upon which to base it. While it is true that the court insisted that such an apportionment would be more equitable between the parties than a total release would be, yet the assumed equity is based upon nothing but a bare assumption. If the district court's theory could be maintained as matter of law, it, nevertheless, in view of the circumstances, would still be far from equitable in this case. If the defendant is to be deprived of his legal rights, and is to be adjudged according to the equities, then he is still entitled to be adjudged in accordance with the actual facts and circumstances.

In this connection it must be kept in mind that the leased premises consisted of a farm, which was used to produce crops. We take judicial notice of the fact that, with respect to farm lands used for agricultural purposes,

there is a dormant and a growing season in each year, and that in this latitude and altitude the principal growing season is between April and October; in some years a little earlier, and in others a little later. Mr. Garner, therefore, had the full benefit of the growing season after the land was surrendered to and accepted by him, and so had any one to whom the lands were leased for that year. If, therefore, the premises in question had been farmed by Garner himself, he might have grown and harvested a full crop; and what is true in his case would be true as to a tenant to whom the premises were released by Garner. If Garner had thus relet the premises, and had received a portion of the crop, as is frequently done, it might well be that he had received all the rent the land was worth. That would also have been true, if he had received a cash rent.

Be that as it may, however, if Garner wanted to hold the defendant for the rent for the year 1917, he was required to accept the premises upon that condition, and to so notify the defendant. Not having done that, but having accepted the premises unconditionally, he must abide by the law, the same as all others. In view of the circumstances, therefore, the apportionment of the rent in accordance with the method adopted by the district court was manifestly unjust and inequitable. We have referred to this phase of the case, however, only for the purpose of showing that the theory of apportioning the rent which the district court assumed to be more equitable than the general law governing surrender is fallacious, and, under certain circumstances, might result in gross injustice, unless based strictly upon all the facts and circumstances, which was not done in this case.

In view of the conceded facts, which cannot be disputed, and in view of the well-settled law, there is—there can be—but one conclusion in this case, and that is that the judgment cannot prevail; further that, in view that the result entirely depends upon a legal question, this court should end the litigation between the parties and now declare the legal conclusion that the district court should have declared, namely, that the plaintiff cannot recover, and that

judgment be entered in favor of the defendant dismissing the action.

It is therefore ordered that the judgment of the district court be and the same is hereby reversed, and the cause is remanded to the district court of Weber county, with directions to set aside its conclusion of law in favor of the plaintiff and enter a conclusion of law in favor of the defendant, and enter judgment dismissing the action. Defendant to recover costs.

CORFMAN, C. J., and WEBER and THURMAN, JJ., concur.

GIDEON, J. (dissenting). It is apparent from the record that the district court recognized fully the general rule of law stated in the text-books and cases, that in an action upon the covenants of a lease a complete defense is made by pleading and proving a surrender of the leased premises during the term of the lease and prior to any rental becoming due and payable. That, however, in the judgment of the district court, is not the question present in this record. A promissory note was given at the time of the execution of the lease agreement. The consideration for the note was the rental of the premises for a period of one year, admittedly a valid and good consideration. The note was a part of the contract between the parties, just as much as the lease.

"Every negotiable instrument," such as a promissory note "is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value." Comp. Laws Utah 1917, § 4053.

The defense, in its final analysis, is failure of consideration. The answer alleges the relationship of landlord and tenant and that by surrender of the premises that relationship was terminated; that the termination of that relationship wiped out the consideration of the note. The district court was of the opinion that while the relationship of landlord and tenant had ceased the presumption of consideration to support the note still existed. The burden was therefore thrown upon the

defendant to support the contention that there had been a failure of consideration. It is without dispute that there had not been a total failure. The consideration for the note was a year's rental. The defendant had occupied the premises for some five months, a part of the year's rental. True it is, the court arbitrarily prorated the annual rental and gave judgment for the months the defendant occupied the land. That ruling of the court, however, is not before this court for review. The defendant's position is, and was at the trial, that there had been a termination of any contractual relationship between the landlord and tenant, and having established that fact that the consideration for the note failed in toto. In my judgment, such does not necessarily follow.

It is suggested that to uphold the judgment of the district court is to establish a different legal relationship between a landlord and tenant when a note is given than when one is not given. The legal relationship between the parties is created and controlled by the contract entered into by them. If the lessee executed a promissory note to pay, and the law throws the burden on him to prove a failure of consideration, the court is not creating any different relationship in enforcing that contract. It is simply taking the contract between the parties as it finds it and enforcing it. The legal relationship between the parties is based upon the contract. A part of the contract in this case was a promissory note, which carries with it the presumption of consideration. A defense against that presumption places the burden upon the defendant, and that is so by reason of the contract and the legal rights and duties growing out of the same. To reverse this judgment and direct a dismissal of the action in effect takes from the assignor of plaintiff something of value and gives it to the defendant without any consideration. Unless the rules of law compel that result, the courts should hesitate before entering a judgment to that effect.

The judgment of the district court, in my opinion, should be affirmed. I therefore dissent.