**INNIS, Plaintiff, v. McDONALD et, Defendants.**

Common Pleas Court, Franklin County.

No. 178479.  Decided April 9, 1956.

Knepper, White, Richards, Miller & Roberts, for plaintiffs.
Wright, Harlor, Purpus, Morris & Arnold, for Buckeye Union Casualty Company.

## OPINION

By LEACH, J.

Plaintiff, on January 9, 1952, recovered a final judgment against defendant McDonald in the amount of $1,125.00 and costs amounting to $90.88, because of damage to plaintiff's dwelling house resulting from the negligence of McDonald.  Thereafter, the judgment remaining unsatisfied, plaintiff, as authorized by §3929.06 R. C., filed a supplemental petition, making The Buckeye Union Casualty Company a new party defendant, alleging that Buckeye had issued to McDonald a certain policy of insurance by which Buckeye agreed to pay on behalf of McDonald all sums, within limits in excess of $1,125.00, which McDonald should become obligated to pay by reason of liability imposed upon him by law for damages because of injury to property of others caused by accidents which should occur during the policy period.

A jury having been waived, the action of the plaintiff against The Buckeye Union Casualty Company has been submitted to the Court on the pleadings, stipulations of fact and briefs of counsel.

The parties are in agreement that the sole issue here involved is the applicability of certain language of Exclusion "G" of the policy

of insurance to the facts stipulated, Buckeye conceding that if this Exclusion is not applicable, plaintiff should have judgment against Buckeye for the full amount of his prayer.

It appears from the stipulation that Buckeye issued to George McDonald d. b. a. Dun-Rite Home a Manufacturers and Contractors Schedule Liability Policy for the period from June 1, 1949, to June 1, 1950, which included "Coverage B" (Property Damage Liability), "Division 1." By the terms of "Coverage B," Buckeye agreed:

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of such of the hazards hereinafter defined as are indicated by specific premium in Item 4 of the Declarations."

"Division 1" defined the hazards covered by the policy as:

"The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

Under Item 4 the location of the premises was described as "1530 West Broad St., Columbus, Ohio, and elsewhere in the State of Ohio" and the classification of operations as "Painting, Decoration or Paper Hanging—N. O. C.—including shop operations."

Under "Exclusions," it was provided that

"This policy does not apply:

*       *       *       *       *

"(G) Under Coverage B, to injury to or destruction of property owned, rented, occupied or used by the Insured, and with respect to Divisions 1 * * *, of property in the care, custody or control of the Insured."

It appears that on July 9, 1949, plaintiff entered into a written contract with McDonald by which McDonald agreed "to scrape all loose and scaling paint, to putty all places needing it, apply one coat of sash enamel to all window sash, apply one coat of tinners red to all gutters and ridge roll, to apply two coats of paint to dwelling house of the plaintiff "located at 2955 Dresden Ave." for a stated sum of money. By the terms of the contract plaintiff agreed "to give free access to said property until work agreed upon in this contract is completed." The contract stated that McDonald had "Liability and Property Damage insurance with the Buckeye Union Casualty Co., of Columbus, Ohio, covering property and persons while work is in progress. Policy number being MCL 21829."

The parties hereto have stipulated:

"* * *

"6. Defendant, George P. McDonald, and his employees purported to enter upon the performance of said contract pursuant to its terms on July 9, 1949, and continued the purported performance thereof from time to time thereafter until August 5, 1949.

"7. Prior to July 9, 1949, during the period from July 9, 1949, to August 5, 1949, inclusive and subsequent to August 5, 1949, plaintiff, with his wife and children, was in continuous residence in and occupancy of the dwelling house at 2955 Dresden

Avenue, Columbus, Ohio, referred to in said contract and was in continuous residence and occupancy of the lot of land upon which said dwelling house was situated. Plaintiff's residence in and occupancy of said premises during the period from July 9, 1949 to August 5, 1949, inclusive, was substantially identical to his residence in and occupancy of said premises both before July 9, 1949 and subsequent to August 5, 1949.

"8. In the purported performance of the work required of him under said contract, defendant, George P. McDonald, and his employees, scraped loose paint from exterior surfaces of plaintiff's dwelling house, including door and window frames; applied putty to parts of said exterior surfacing where needed in his judgment; applied a primer coat of paint to exterior surfacing where needed in his judgment; applied a primer coat of paint to exterior surfaces of said dwelling house; scraped parts of the exterior surfaces of said dwelling house to remove blisters which developed following the application of said primer coat of paint: inspected and tested or caused to be inspected and tested the exterior surfaces of said dwelling house for moisture content; used various scraping tools and sanding machines and blow torches upon said exterior surfaces of said dwelling house in connection with removing said primer coat of paint down to the wood to remove said blisters; applied a second primer coat of paint to said exterior surfaces; and applied a finishing coat of paint to exterior surfaces of the west side of dwelling house.

"In the purported performance of the work required of him under said contract, defendant, George P. McDonald, damaged plaintiff's dwelling house and its several parts:

"(a) by gouging the siding, door frames, and window frames thereof by the use of various scraping tools and sanding machines;

"(b) by burning the siding, door frames and window frames thereof by the use of blow torches.

for which damage the judgment, referred to in paragraph 2 hereof, was recovered."

As heretofore noted, the sole issue presented is the applicability of "Exclusion G" of the policy to the facts presented. More specifically, the issue is whether the property of the plaintiff which was damaged (the siding, door frames and window frames of plaintiff's dwelling house which were gouged and burned) was property "in the care, custody or control of the insured" (McDonald), the brief of Buckeye stating that there is no claim that the insured "owned, rented, occupied or used" the property damaged.

It is the claim of the plaintiff that the "care, custody or control" of the dwelling house obviously was in the plaintiff prior to the entrance on the premises by McDonald and his employees between July 9, 1949, and August 5, 1949, and that since plaintiff continued in residence and occupancy of the house during this time and since by the terms of the stipulation plaintiff's residence and occupancy before such time, during such time and after such time was "substantially identical," it necessarily would follow that the dwelling house was in the "care, custody

or control" of plaintiff at the time it was damaged. Stress is laid by the plaintiff on the fact that the contract between plaintiff and McDonald gives "free access to said property" to McDonald for the purpose of completing the contract, plaintiff asserting that such language is an express recognition of the retention of "care, custody or control" by the plaintiff, since there would be no occasion to grant McDonald "free access" if during this time he had "care, custody or control."

Buckeye contends, on the other hand, that since the damage done to the siding, door frames and window frames was done while insured actually was on the job and working thereon, such property was subject to insured's immediate direction and was under his supervision so as to constitute care or control under the above exclusion. Conceding that McDonald did not have the general or exclusive "care, custody or control" over the entire dwelling house, Buckeye contends that McDonald did have such "care, custody or control" of that portion of the house on which he was working and which he damaged in the course of such work. Buckeye asserts that the language of exclusion here under consideration was intended to exclude the risk attendant on the results of and the quality of the insured's workmanship.

By way of illustration Buckeye contends that the policy would apply where the insured dropped a ladder on the hedge of the plaintiff or of a neighbor; if while spraying paint, some were to get on plaintiff's automobile or that of his neighbor; or if while using a blow torch plaintiff's draperies had been ignited causing damage to them and other parts of the interior of the house, but that it does not cover a situation where the insured is doing the work called for in his contract at the place or places where such work is to be performed and damage results from the manner in which he does the work.

It would seem that the argument might better have been advanced to the effect that the damage incident to the quality of the insured's workmanship, in the absence of some accidental means, would not constitute damages "caused by accident and arising out of such of the hazards hereinafter defined" within the purview of such language in "Coverage 3" of the policy. Such issue is not before the Court, however, the parties having stipulated that the damage in question was "accidentally sustained by plaintiff" (Paragraph 2 of Stipulation), and the defense of Buckeye being predicated entirely on the applicability of the language "care, custody or control" of "Exclusion G." Assuming that the policy would not apply to liability for damages for breach of an implied warranty as to the quality of workmanship, here recovery against McDonald according to the stipulation was for "damages accidentally sustained by plaintiff * * * because of injuries to plaintiff's property as the result of negligence of defendant, George P. McDonald."

The essence of Buckeye's claim, therefore, is whether, under the terms of the policy, a distinction should be made between the "care, custody or control" of the dwelling house as an entity and the "care, custody or control" of that portion of the house on which the insured was to perform work, without regard to whether any damage was "caused by accident." To accept the contention of Buckeye in its full

scope would mean that the policy would not cover damages to any portion of the exterior of the dwelling house over which layers of paint ultimately were to be applied regardless of the extent of such damages or the manner in which such damages were sustained. Thus the accidental falling of a ladder damaging plaintiff's hedge would be covered, but the accidental falling of a ladder gouging the siding would not be covered.

Basically the claim of Buckeye appears to be that since the insured had the duty to exercise ordinary care as to the property on which he would perform services, such property was in his "control" or at least in his "care." It should be noted, however, that the insured likewise had a duty to exercise ordinary care not to injure other property of the plaintiff, including the hedges, the automobile, the draperies, the interior of the house, etc. Buckeye concedes that damage to such other property would be covered by the policy, and yet if we are to apply to the word "care," as used in the policy, the broad scope of the term as employed in the field of negligence law, the effect of such interpretation logically would be to exclude all liability coverage.

In our attempt to interpret this wording of the policy in its ordinary, usual and popular sense and in accordance with a reasonable construction within the framework of the entire policy (22 O. Jur. 334, et seq), we conclude that we must reject the meaning of the word "care" as employed in the field of negligence law. In this connection, we conclude that in the ordinary use of the English grammar, one does not speak of everything to which a duty of care is owed as being "in" the care of the person owing such duty. Customarily when one speaks of something being in the "care, custody or control" of another, reference is had to a legal relationship akin to that of ownership, tenancy or bailment. In this sense, we conclude that the property of plaintiff which was damaged was in his own "care, custody or control" and was not "in" the "care, custody or control" of McDonald, the insured, as such language was employed in the policy of insurance in question.

Even if we were to conclude that the portion of the dwelling house on which McDonald, by the terms of the contract, was to perform work, was in his "care custody or control" at the specific moment that work was being performed thereon but that the policy would include liability for accidental injury to other portions of the dwelling house, we would still be faced with the problem of determining whether McDonald had "care, custody or control" of more than that portion of the surface of the siding, door frames and window frames which would be affected by his contractual agreement to "scrape all loose and scaling paint" and "to apply two coats of paint," and whether the gouging and burning extended beyond such portion of plaintiff's dwelling house. While this might seem to be a hairline distinction, we are inclined to believe that the underlying theory of Buckeye's assertion would compel such determination. In view of what has been said before, however, we need not determine this issue. Instead we predicate our decision on the basis that in the ordinary usage of English grammar, we cannot say that the property of the plaintiff which was damaged, admittedly "caused by

accident and arising out of the hazards hereinafter defined," was property "in the care, custody or control of the insured." In other words, we cannot say that the language under consideration **clearly excludes** the operation of the contract of insurance.

As stated in the 2nd paragraph of the syllabus of **Home Indemnity Co. v. Village of Plymouth, 146 Oh St 96:**

"2. Where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof."

At best the language employed when applied to the facts under consideration is capable of several constructions, some of which would include coverage and some of which would exclude it. As stated by Hart, J., in Home Indemnity Co. v. Village of Plymouth, supra, at page 101:

"Courts universally hold that policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably to the insured."

To this same effect see **22 O. Jur., 340, Section 185,** and the many Ohio cases cited therein.

In our opinion the construction urged by the plaintiff is at least as reasonable, if not more reasonable, than that urged by Buckeye. If it be the intention of Buckeye, in policies of this type, to exclude coverage for liability for damage, even though "caused by accident," to property as to which the insured by the terms of his contract has a duty to perform some work, it would appear that the employment of precise unambiguous language could have accomplished this result.

In our consideration of this case, we have been referred to no Ohio cases involving a similar problem. Reference has been made to certain out-of-state cases which, while helpful, are each distinguishable on their facts.

Plaintiff relies on A. T. Morris Co. v. Lumber Mut. Casualty Co., 298 N. Y. S., 227, 163 Misc. 175; Cohen and Powell, Inc. v. Great American Indemnity Co., 127 Conn. 257, 16 Atl. (2nd) 354; Cohen v. Keystone Mut. Casualty Co., 151 Pa. Super, 211, 30 Atl. (2nd) 203; Maryland Casualty Co. v. Hopper, 237 S. W. (2nd) 411; and Rex Roofing Co. v. Lumber Mut. Casualty Co., 116 N. Y. S. 876, 280 App. Div. 665.

Buckeye relies upon Aetna Casualty and Surety Co. v. Patton, 57 S. W. (2nd) 32; State Auto Mut. Ins. Co. v. Connable-Joest, Inc., 125 S. W. (2nd) 490; Clark Motor Co. v. Union Pac. Ins. Co., 139 Pac. (2nd) 570; Hardware Mut. Casualty Co. v. Mason-Moore-Tracy, Inc., 194 Fed. (2nd) 173; and Jarrell Const. Co. v. Columbia Casualty Co., 130 Fed. Supp. 436.

In the A. T. Morris Co. case upon which plaintiff places principal reliance, the policy excluded coverage as to injury to property "in the care, custody or control" of the insured. The insured, as a subcontractor, was engaged in performing certain work in a theatre building and negligently caused damage to the ceiling and dome by walking in the area above the same. The fact pattern is similar to the instant case in that the theatre continued daily operations. Buckeye asserts that it is dissimilar in that the area damaged did not include property being worked

on by the insured who was engaged in repairing certain air conditioning equipment but instead involved damage to other nearby property. The Court therein concluded that the care, custody or control of the real property remained in the owners or lessees thereof and that the insured was only on the property temporarily for the purpose of doing the work.

In support of its contention that an insured may have care, custody or control of a portion of real property even though other portions remain in the care, custody or control of the owner or lessee, Buckeye relies principally on the Mason-Moore-Tracy, Inc. case, supra. Here again, the policy excluded coverage as to injury to property "used by or in the care, custody or control" of the insured. The insured, while engaged in moving a heavy piece of machinery of a tenant from a building and while using an elevator of the building for such movement, damaged the elevator when it suddenly descended to the bottom of the shaft. The Court concluded that the elevator was being "used by" the insured when it fell and that it was in the insurer's "control." While it is clear that the elevator, as a fixture, was a part of the real property, we believe that to hold that such a fixture, under the facts in that case, was in the "control" of the insured would not lead to the conclusion that the property here involved was of such a character, readily distinguishable from the other real property of the plaintiff admittedly "in the care, custody or control" of the plaintiff as to constitute property "in the care, custody or control" of the insured.

No useful purpose would be served by a detailed discussion of the facts in the other cases cited. Several involved situations where personal property, by rental contract or bailment, had been placed in the sole custody of the insured and thus in his care, custody or control. In the Jarrell Construction Co. case, real property was held to be in the "care, custody or control" of the insured, but here the insured, as the principal contractor on certain construction work on a public project, by the terms of the specifications had the "custody," "charge" and "care" of the property in question.

Reference should be made to the case of **Leggett Bros. Coal Co. v. American Ins. Co., 8 Abs 457.** Here the policy excluded damage to property "in charge of" the insured. The insured was the tenant of a garage which he used to house his trucks. The walls of the garage were damaged due to the negligence of the insured's employees in crashing into the walls. The Court held that the property was "in charge of" the lessee, the insured, and not the lessor. While this case is not too much in point, it is indicative of the concept that question of custody, charge, control, care, etc., of real property basically is determined by a determination of legal tenancy. Conceding that there can be exceptions to this basic method of determination, we conclude that the facts in this case do not call for the application of any such exception.

We conclude as a matter of fact therefore, that the property of the plaintiff which was damaged was not "in the care, custody or control" of McDonald, the insured, within the purview of the language as it appears in "Exclusion G" of the liability policy issued by The Buckeye Union Casualty Co. to McDonald, and which was in full force and effect at the time plaintiff sustained such damage.

Judgment, therefore, is rendered for the plaintiff against defendant, The Buckeye Union Casualty Co. in the full amount of the prayer. Entry may be prepared accordingly, reserving exceptions.