362 P.2d 790

Francis T. O'ROURKE, d/b/a Goodyear Roof
Restoring & Rebuilding Co., Plaintiff-
Appellant,

v.

NEW AMSTERDAM CASUALTY COM-
PANY, Defendant-Appellee.

No. 6786.

Supreme Court of New Mexico.

March 6, 1961.

Rehearing Denied June 7, 1961.

Bingham & Klecan, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, Charles B. Larrabee, Albuquerque, for appellee.

CHAVEZ, Justice.

Appellee, New Amsterdam Casualty Company, issued to appellant, Francis T. O'Rourke, d/b/a Goodyear Roof Restoring & Rebuilding Co., a policy of insurance in which it agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

The policy required appellee to defend suits filed against appellant.

Appellant, a roofing contractor, entered into a contract to re-roof the dwelling house

of Joseph E. and Merille H. Glover, 913 Grandview S.E., Albuquerque, New Mexico. In the course of the re-roofing a rain occurred on the night of October 16, 1956, or the early morning of October 17, 1956, damaging the Glover residence and some household goods.

Suit was brought against appellant by St. Paul Fire and Marine Insurance Company, the subrogated insurance carrier of Joseph E. and Merille H. Glover, praying judgment in the sum of $4,037.09. Appellee refused to defend said suit. Appellant retained attorneys to defend said suit and subsequently the suit was settled for $1,000. Appellant then filed this suit against appellee, praying judgment in the sum of $1,700, which included counsel fees. Appellee answered this suit alleging that the damage to the Glover residence was not caused by an accident but resulted from rainfall into the building, the roof of which had been removed by appellant.

At the conclusion of appellant's evidence, appellee moved for a directed verdict, and although the court stated it would reserve its ruling until he heard all of the evidence, no further evidence was presented. After both sides had rested, appellee renewed its motion to dismiss, the motion was argued, and the trial court granted the motion for directed verdict. Judgment was rendered for appellee and this appeal followed.

The suit filed by St. Paul Fire and Marine Insurance Company against appellant alleged that appellant negligently, carelessly and without regard to established custom and practice, removed the roof from the Glover residence, leaving the interior of said dwelling virtually unprotected from the elements; that on the night of October 16, 1956, or the early morning of October 17, 1956, a half-inch rain occurred; that rain came through the sheeting board cracks, entered the area between the ceiling joists of said Glover residence, soaking the insulation, lath and plaster, severely damaging the walls, ceiling, furniture and rugs.

The insurance policy issued to appellant is designated "New Amsterdam Casualty Company Schedule Manufacturers' and Contractors' Liability Policy." It is admitted that the insurance policy was in effect at the time of the incident when a rain occurred damaging the Glover residence. The pertinent provisions of the policy are as follows:

"Policy Provisions—Part 2:

"Declarations.

"The business of named insured is Roofer.

"Div. 1. Premises Operations * * Roofing—All kinds—including yard employees. * * *

"Div. 4. Products Completed Operations—Roofing.

"Definition of Hazards.

"Division 1—Premises—Operations.

"The ownership, maintenance or use of premises, and all operations.

"Coverage D—Contractual Liability Of A Specified Type.

"Division 2, Property Damage Liability—injury to or destruction of property, including the loss of use thereof, caused by accident.

"Exclusions.

"This policy does not apply:

"(m) under coverage B, with respect to division 1 of the Definition of Hazards, and under coverage D, to any of the following insofar as any of them occur on or from premises owned by or rented to the named insured and injure or destroy buildings or property therein and are not due to fire: * * (3) rain or snow admitted directly to the building interior through defective roofs, leaders or spouting, or open or defective doors, windows, skylights, transoms or ventilators;

"Conditions

"3. Definitions

"(c) Assault and Battery. Under coverages A and B, assault and battery shall be deemed an accident unless committed by or at the direction of the insured.

"6. Limits of Liability, Coverages A, B and D.

"Subject to the limit of liability with respect to 'each accident,' the limit of liability, if any, stated in the declarations as 'aggregate' is the total limit of the company's liability for the division of hazards, and under the coverage, for which said limit is stated; * * * Under divisions 1 and 3 of the Definition of Hazards and under coverage D, said limit applies separately to each project with respect to operations being performed away from premises owned by or rented to the named insured."

The evidence discloses that appellant commenced the roofing operations on the Glover residence on the morning of October 16, 1956, and finished on October 18, 1956. Appellant started working at approximately 7:30 or 8:00 A.M. on the morning of October 16, 1956, and about that time on said date he telephoned the Weather Bureau and inquired if there was any reasonable amount of assurance that there would be no moisture in sight for at least 24 to 30 hours. The Weather Bureau said "there is no rain in sight" and appellant testified that the weather was clear at that time. Appellant also testified as to the day of October 16, 1956, saying "It was a dry warm day and the sky was clear." Appellant left the Glover operation about 5:00 P.M. and later about 6:30 or 7:00 P.M. on October 16, 1956, he telephoned the Weather Bureau again to ascertain the forecast at that time. Appellant testified "it was the same forecast, no rain in sight." On the

night of October 16, 1956, or the early morning of October 17, 1956, the rain occurred and the Glover residence was damaged. Appellant testified on cross-examination that showers in October do not occur too often, but in the summertime in July and August he has seen it happen quite frequently. Appellant "considered October a pretty safe month for roofing in this country," but that it did occasionally rain. Although it is not in the record, the calendar for the year 1956 shows that October 16 fell on a Wednesday and October 17 was Thursday.

The word "accident" is not defined in the insurance policy.

Appellant raises two points upon which it relies for reversal: (1) That the trial court erred in granting appellees' motion for directed verdict for the reason that a prima facie case had been made out by appellant; and (2) that it was error to dismiss count two of appellant's complaint. Appellant contends that under the factual situation in this case and the law applicable thereto, that appellant was covered under its policy of insurance.

It has been held that where the term "accident" is not defined in the policy, the term must be interpreted in its usual, ordinary and popular sense. M. Schnoll and Son, Inc. v. Standard Accident Ins. Co., 190 Pa. Super. 360, 154 A.2d 431.

The term "accident" has been variously defined. In United States Mutual Accident Association v. Barry, 131 U.S. 100, at page 121, 9 S.Ct. 755, at page 762, 33 L.Ed. 60, "accidental" is defined as meaning "happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected."

In Ocean Accident & Guarantee Corp. v. Penick & Ford, 8 Cir., Iowa, 1939, 101 F. 2d 493, 497, the court said:

"* * * In determining the meaning of the term 'accident', as used in this policy, the question is not what it might mean to a scientist or one skilled in the subject involved, but what it means to the average man. Lewis v. Ocean Acc. & Guarantee Corp., 224 N. Y. 18, 120 N.E. 56, 7 A.L.R. 1129; Massachusetts Bonding & Ins. Co. v. John R. Thompson Co., 8 Cir., 88 F. 2d 825. Unless some technical meaning was obviously intended, the words 'accident' and 'accidental' should be given the meaning they impart in common speech. Lickleider v. Iowa State Traveling Men's Ass'n, 184 Iowa 423, 166 N.W. 363, 168 N.W. 884, 3 A.L.R. 1295 * * *."

Webster's New International Dictionary, Second Edition, Unabridged, defines "accident" as follows:

"1. Literally, a befalling. a An event that takes place without one's

foresight or expectation; an undesigned, sudden, and unexpected event. 'Of moving accidents by flood and field.' Shak. b Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by accident. c Chance; contingency. * * *"

This court, speaking through Chief Justice Brice, in Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342, 350, after reviewing many authorities, including the English cases, stated:

"We are satisfied with the conclusions of these courts, and hold that 'injury by accident' means nothing more than an accidental injury, or an accident, as the word is ordinarily used. It denotes 'an unlooked for mishap, or an untoward event which is not expected or designed.' * * *"

Citing Fenton v. Thorley, (1903) A.C. 443.

We also said in the Stevenson case:

" * * * The test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing * * * The element of unexpectedness, inherent in the word 'accident' is sufficiently sup-

plied either if the incident itself is unusual, the act or conditions encountered abnormal, or if, though the act is usual and the conditions normal, it causes a harm unforeseen by him who suffers it."

See also Webb v. New Mexico Pub. Co., 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002; and Sanchez v. Board of County Commissioners, 63 N.M. 85, 313 P.2d 1055.

In Cross v. Zurich General Accident & Liability Ins. Co., 7 Cir. Ill., 1950, 184 F.2d 609, 611, Cross and another sued Zurich General Accident & Liability Ins. Co. under a public liability insurance policy, to defend against or settle claims against Cross for damage to glass in windows of a building by hydrofluoric acid in a solution used by plaintiffs in cleaning the outside walls of the building. The district judge held that the damage was not caused by accident within the policy. The Circuit Court held that the insured's negligence is not the proper test in considering what constitutes an accident within a public liability policy containing a clause obligating the insurer to pay all sums which insured becomes obligated to pay because of his legal liability for property damage caused by accident. The United States Circuit Court of Appeals, Seventh Circuit, in passing on this case said:

"The basis for the decision of the trial court was that plaintiffs intentionally used hydrofluoric acid in the solu-

tion and failed to take the precaution of covering the windows with grease or heavy paper. But failure to take a proper or effective precaution does not prove intent to damage. Plaintiffs may have been negligent in not keeping sufficient water on the windows, but the very fact that water was applied to each window negatives any idea that plaintiff intended to damage same. And lacking such intent, the damage was accidental, even though caused by negligence."

Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co., 280 App.Div. 665, 116 N.Y.S.2d 876, was a case wherein a roofing company was engaged in resurfacing the roof of an apartment building. The work commenced on January 18th and was suspended because of inclement weather on the 19th. Work was resumed on the 20th and progressed on the 21st to a point where the entire roof was covered with felts, nailed down and sealed on all sides with flashing cement, and nearly half of the roof was covered with an outer layer of felts mopped in with hot asphalt, when it began to snow heavily, preventing completion of the work. Later in the day the snow turned to rain. Because the roof was a flat surface and snow-covered, the water was unable to drain off and collected on the roof and backed up under the felts, leaking down into the interior of the building. The court held that the water leaking through the roof left exposed to the elements by the roofing company's inability to finish the job, because of inclement weather, was caused by "accident" within the purview of the policy insuring roofing contractor against liability for damages because of injury to property caused by accident. See also Juzefski v. Western Casualty and Surety Company, 173 Cal.App.2d 118, 342 P.2d 928; Minkov v. Reliance Ins. Co. of Phila., 54 N.J.Super. 509, 149 A.2d 260.

In Innis v. McDonald, Ohio Com.Pl., 1956, 150 N.E.2d 441, the court held that where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.

Appellee cites numerous cases from the Tenth United States Circuit Court of Appeals and other United States Circuit Courts, which are distinguishable from the case before us because of the difference in the facts and the principles of law applicable under those facts. Midland Const. Co. v. United States Cas. Co., 10 Cir. Kan., 1954, 214 F.2d 665, and Christ v. Progressive Fire Insurance Company, Fla.App.1958, 101 So.2d 821, are distinguished from the case before us because of the time of the occurrence. In both of the above cited cases the occurrence was in the summertime or in the "rainy season." Also distinguished from the case before us are the cases of

Kuckenberg v. Hartford Accident & Indemnity Co., 9 Cir. Or., 1955, 226 F.2d 225, and United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754.

It is probably true that in Wichita, Kansas, and in Arcadia, Florida, during the summertime, showers or rain are common occurrences and their happening cannot be said to be unexpected, unusual or unanticipated. In the case before us, the occurrence was on October 16 or 17, 1956, in Albuquerque, New Mexico, in the fall of the year. The evidence shows that during the months of July and August in Albuquerque there are frequent showers or rain, but that in October it is ordinarily a fairly dry month. The rain was unexpected. Appellant testified that the day of October 16, 1956, was clear; that he telephoned the Weather Bureau on the morning of said day and was told that the weather was clear and no rain was in sight; he telephoned the Weather Bureau again about 6:30 or 7:00 P.M. in the evening of said day and was again told that there was no rain in sight. These facts are distinguishable from Midland and the other cases cited by appellee.

Hutchinson Water Co. v. United States Fidelity & G. Co., 10 Cir. Kan., 1957, 250 F.2d 892, 894, and the cases therein cited are also distinguished from the case at bar. However, some of the language used in Hutchinson is pertinent:

" * * * At the same time, we did not rule out negligence as a predicate for accidental cause or result. Indeed, we indicated in the Midland case that if the rain, which was the immediate cause of the damage, had been sudden and unpredicted, it might properly have been considered an accidental cause or result."

American Cas. Co. of Reading, Pa. v. Minnesota F. B. S. Co., 8 Cir. Minn., 1959, 270 F.2d 686, was a case where insured's fertilizer plant used explosives to blast its solidified material, thereby resulting in loud noises and vibrations and allowing the release of ammonia fumes, powder and dust, noise and vibrations, resulting from the explosions carried on over a period of more than six years, to the damage of surrounding property and discomfort to persons residing nearby. The court held, under the facts, that the resulting damage was not caused by "accident" within the terms of the liability policy.

The reasoning of these cases is that a finding that substantial damage of the type incurred was a normal and probable consequence of such blasting and clearing as the contractor undertook; that under the law it is sufficient to sustain a conclusion that the damage was not caused by accident within the meaning of the policy. Or, put another way, these cases involved conscious acts, as a result of which it could

reasonably be foreseen that the damage which actually occurred would result.

That the Tenth Circuit Court of Appeals is still concerned with the logic behind these cases is observed in Albuquerque Gravel Products Company v. American Employers Insurance Company, 10 Cir. N.M., 1960, 282 F.2d 218, 221, wherein the court said:

> "* * * As we pointed out in Hutchinson Water Co. v. United States Fidelity & Guar. Co., supra, if this rule were followed to its logical conclusion in cases such as we have here, 'the insurer would be free of coverage and the policy would be rendered meaningless.' We are satisfied that the rule of the Neale Construction Company [Neale Construction Co. v. United States Fidelity & Guar. Co., 10 Cir., 199 F.2d 591] and Midland Construction Company cases was not intended to bring about this unhappy result."

The Albuquerque Gravel case is similar to the Midland, Christ, Kuckenberg and American Cas. Co. cases. The contractor negligently constructed and maintained a loading ramp over an arroyo which retarded and diverted the natural flow of water. The evidence established that for generations floods of varying degrees had occurred almost every summer in Albuquerque; that in the summer of 1955, the year involved in this case, the rains were heavier and more frequent. This case involved a finding that the flooding described in the complaints was not "unprecedented, unpredictable, or unforeseeable, or beyond the ordinary experience of man," and "persons resident or doing business within the vicinity of the arroyos should anticipate that the floods will occur and that they may diminish or increase in volume and intensity, depending only upon the uncertain vagaries of nature." The Circuit Court held that there was substantial evidence to support this finding. The court, in the Albuquerque Gravel case, also quoted from the Midland case to the effect that an "unprecedented, torrential downpour of rain may under certain conditions be considered an accident."

Although we do not adopt the language, as it is unnecessary for a decision in this case, we direct attention to a most interesting discussion on the phrase "caused by accident" found in Vol. 23, Insurance Counsel Journal, 1956, pp. 33–43, and particularly to the final paragraph thereof.

In the case at bar, the rain, which was the immediate cause of the damage, was sudden and unpredicted, and can properly be considered an accidental cause or result. Under the facts of the case before us and the authorities cited, we hold that the damage caused to the Glover residence by the rain on the night of October 16, 1956, or the early morning of October 17, 1956, was an accident within the terms of the insurance policy, and that appellee was obligated

to defend against said claim and pay any judgment rendered thereon.

In view of our disposition of this case, it becomes unnecessary to consider the matters raised under appellant's point two.

The case is remanded to the district court with instructions to set aside its judgment of dismissal and enter a judgment for appellant.

It is so ordered.

CARMODY and NOBLE, JJ., concur.

COMPTON, C. J., and MOISE, J., not participating.

On Motion for Rehearing

CHAVEZ, Justice.

In the motion for rehearing, appellee, in addition to other grounds, seeks a rehearing by reason of our directing a judgment for appellant, even though such relief was not sought.

To clarify such direction, it need be mentioned that appellee had an opportunity to present evidence which might tend to dispute the facts, but he did not do so and rested his case. The facts of the case were not disputed. Actually, counsel for appellee in his opening statement so advised the court and jury. Additionally, there was, for all practical purposes, no cross-examination which would raise any factual question for the jury's determination, the sole issue being a proposition of law that the occurrence which caused the damage had not been shown to be within the coverage of the insurance policy. By our decision herein, this court has answered that question. Since no factual issue remains, the ends of justice will be better served by a mandate which will bring this litigation to an end and, under such circumstances, it is the province of this court to direct the entry of a proper judgment. See Rogers v. Kemp Lumber Co., 18 N.M. 300, 137 P. 586, 51 L.R.A.,N.S., 594; Willis v. Kronendonk, 58 Utah 592, 200 P. 1025, 18 A.L.R. 947; Bolian v. Washington-St. Tammany Elec. Coop., Inc., 218 La. 734, 50 So.2d 823, 25 A.L.R.2d 716; Electrical Contractors' Ass'n of City of Chicago v. A. S. Schulman Elec. Co., 391 Ill. 333, 63 N.E.2d 392, 161 A.L.R. 787; United States v. 449 Cases, 2 Cir., 212 F. 2d 567, 45 A.L.R.2d 846; and Liberty Mutual Ins. Co. v. Hercules Powder Co., 224 F.2d 293, 54 A.L.R.2d 513.

The other point raised by appellee's motion for rehearing involves a matter which has been fully disposed of in the above opinion. The motion for rehearing is denied. It is so ordered.

CARMODY and NOBLE, JJ., concur.

COMPTON, C. J., and MOISE, J., not participating.